Christina M. Gagnier (SBN 264578)
cgagnier@carltonfields.com
Stephanie G. Chau (SBN 292699)
schau@carltonfields.com
CARLTON FIELDS, LLP
2029 Century Park East, Suite 1200
Los Angeles, CA 90067-2913
Telephone:   (310) 843-6300
Facsimile: (310) 843-6301

Attorneys for Plaintiff DIGNITY CORP.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGNITY CORP.,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br>**(1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a); AND**<br>**(2) TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)**<br><br>**DEMAND FOR JURY TRIAL** |

126050841.1

Plaintiff Dignity Corp. alleges as follows against Does 1-10 ("Defendants"), on personal knowledge as to Plaintiff's own activities and upon information and belief, as to the activities of others, as follows:

**JURISDICTION AND VENUE**

1. This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. § 1051 et seq. This Court has subject matter jurisdiction over the federal trademark claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

2. Although the true identities of the Defendants are unknown to Plaintiff at this time, upon information and belief, personal jurisdiction is proper because Defendants have engaged in the infringement of Plaintiff's trademarks over the Internet. Upon information and belief, the infringing activity has taken place in every jurisdiction in the Unites States, including this District. In addition, Defendants have utilized social networks based in the United States, which facilitated the Defendants' infringing activities.

3. Upon information and belief, Defendants have contacted and communicated with individuals utilizing the Plaintiff's trademarks in the State of California, with citizens of the State of California, and within this District.

4. Defendants' actions have caused substantial damage to Plaintiff within this District. Plaintiff expects to uncover evidence of additional infringing use of Plaintiff's marks and false dissemination of communications related to Plaintiff's marks by Defendants through the discovery process in this lawsuit.

5. Upon information and belief, Defendants are subject to the general personal jurisdiction of this Court because they have had continuous and substantial contact with individuals in the State of California.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Although the true identities of the Defendants are unknown to Plaintiff at this time, upon information and belief, Defendants may be found in this District and/or a

substantial part of the events giving rise to the claim occurred in this District, the impact of Defendants' conduct and misconduct occurred in this District, and the Defendants are subject to personal jurisdiction in this District.

## PARTIES

7. Dignity Corp. ("Dignity Corp.") is a corporation organized under the laws of Delaware with its principal place of business in New York, New York.

8. Upon information and belief, yet to be identified Defendants John Does 1-10 are present in the United States and have engaged in illicit conduct in the Central District of California as alleged herein. The identities of various John Doe defendants are not presently known, and the Complaint will be amended to include the name or names of these individuals when such information becomes available (each such defendant is referred to herein as a "Doe" and collectively, "Does").

## FACTUAL BACKGROUND

9. This is an action for damages and injunctive relief arising out of Defendants' unlawful and infringing use of Plaintiff's trademarks to perpetrate a targeted and malicious campaign of online harassment against Plaintiff by confusing consumers and Internet users in regards to the quality and integrity of the services provided by Plaintiff Dignity Corp. and its principals, Stephen Braverman and Kent Swig.

10. Dignity Corp. is the purveyor of the virtual currency token, DIGG, and provides services related to the financial sector and virtual currency.

11. Mr. Braverman is a co-founder and part of the leadership team of Dignity Corp. and serves as management in the business enterprise of Dignity Corp. and its virtual currency token, DIGG. The misconduct perpetrated by the Defendants against Mr. Braverman is directly related to Mr. Braverman's management role with Dignity Corp. and the DIGG token.

126050841.1

12. Mr. Swig is a co-founder and part of the leadership team of Dignity Corp. and serves as management in the business enterprise of Dignity Corp. and its virtual currency token, DIGG. The misconduct perpetrated by the Defendants against Mr. Swig is directly related to Mr. Swig's management role with Dignity Corp. and the DIGG token.

13. Defendants are individuals utilizing social networking sites, such as Twitter and Telegram, to perpetrate harassment against Plaintiff by creating fake accounts using Plaintiff's trademarks and Mr. Braverman's name to create the false impression on social networks that certain communications are coming from Dignity Corp. and Mr. Braverman. The Defendants' activities amount to a campaign of systematic infringement and harassment with the intent to harm Plaintiff and economically interfere with their business enterprise, Dignity Corp.

14. Defendants are not, and have never been, authorized to use the trademarks owned by Plaintiff.

15. Defendants' conduct, together with that of currently unknown co-conspirators, is causing Plaintiff to suffer substantial pecuniary losses and has caused immediate and irreparable injury to Plaintiff.

**PLAINTIFF'S FEDERALLY PROTECTED RIGHTS**

16. Dignity Corp. is a corporation in the United States. Since at least May 2020, Dignity Corp. has used, and continues to use, trademarks in commerce including the following distinctive and non-functional marks which have developed both consumer recognition and goodwill: "DIGNITY CORP.", "DIGG", "$DIGG", "$DIG", "$DIGau", and "DIGNITYGOLD" ("Dignity Marks"). Dignity Corp. uses its Dignity Marks and affiliated content on its social media accounts that it has created on social networking sites, such as Twitter, to promote its services and its virtual currency token, DIGG.

17. Mr. Braverman has created and used social media accounts to promote his business enterprise, Dignity Corp., in the United States. As a principal

1  of Dignity Corp., Mr. Braverman has used, and continues to use, social media to
2  communicate with individuals interested in the services and token provided by
3  Dignity Corp. As a co-founder of the company, Mr. Braverman takes on a public
4  relations role with all relevant stakeholders and the general public.
5      18.   Mr. Swig has created and used social media accounts to promote his
6  business enterprise, Dignity Corp., in the United States. As a principal of Dignity
7  Corp., Mr. Swig has used, and continues to use, social media to communicate with
8  individuals interested in the services and token provided by Dignity Corp. As a co-
9  founder of the company, Mr. Swig takes on a public relations role with all relevant
10 stakeholders and the general public.
11     19.   Dignity Corp., as an entity, Mr. Braverman, and Mr. Swig all work in
12 the common enterprise of promoting Dignity Corp. and its services. As such, the
13 reputation of Dignity Corp.'s principals, Mr. Braverman and Mr. Swig, are
14 intertwined with the reputation and goodwill associated with the Dignity Marks.

### Defendants' Misconduct

16     20.   Beginning in August 2020, Defendants began creating "spoof" social
17 media accounts on the social networking site Twitter and the social communication
18 application Telegram to infringe the Dignity Marks and harass Dignity Corp., Mr.
19 Braverman, and Mr. Swig. These accounts would take the Dignity Marks and
20 create accounts on Twitter impersonating Mr. Braverman and using the Dignity
21 Marks. Defendants, utilizing Dignity Marks, created vile and harassing social
22 media posts with the purpose of intimidating Dignity Corp, Mr. Braverman, Mr.
23 Swig, their families, and their business associates. The sole purpose of Defendants'
24 undertaking was deceiving the public into believing that these accounts, and the
25 vile content being disseminated through these accounts, were coming directly from
26 Dignity Corp. and Mr. Braverman.
27     21.   Mr. Braverman and Dignity Corp. reported the accounts and posts to
28 Twitter as the Defendants were unknown at the time of the account creation and

1  posts, and they remain unknown to this day. While some of the Defendants'
2  Twitter accounts and posts were removed by Twitter, the Defendants would simply
3  create new accounts and continue to perpetrate the systematic infringement and
4  harassment against Dignity Corp., Mr. Braverman, and Mr. Swig and continue to
5  utilize the Dignity Marks without permission.
6      22.   In October 2020, the Defendants' perpetration of infringement and
7  fraudulent and harassing behavior utilizing the Dignity Marks became more
8  persistent, and escalated to dozens of posts per week from the period of October
9  16, 2020, to November 10, 2020.
10     23.   The Tweets created, posted, and shared by Defendants using the
11 Dignity Marks included increasingly vile content and threats. One Tweet from the
12 Twitter account @BravermanSteve, one of the spoof accounts impersonating Mr.
13 Braverman himself, read, "We are hiring!! Because I will be killed in 2021, we are
14 looking for the next CEO of dignitygold.com Please DM @BravermanSteve
15 $DIG." The profile description for this same account read, "I work 24 hours a day,
16 unfortunately I realize this isn't sufficient and for that reason I will be killed soon."
17     24.   On October 21, 2020, the Twitter account @StillNoGold posted:
18 "Only scammers risk getting shot in the back of the head. $DIG $DIGG" The post
19 included a photo of Mr. Braverman that read, "If I ever get shot in the back of the
20 head."
21     25.   The Twitter account @StillNoGold was the subject of much of the
22 infringing content generation. The profile itself used a photo or Mr. Braverman as
23 the profile background and including a link to the dignitygold.com website,
24 attempting to create an affiliation between the account, Dignity Corp., and Mr.
25 Braverman.
26     26.   On November 6, 2020, the Twitter account @MrSmileyBrave posted
27 a photo of an animation of a knife stabbing and penetrating a picture of Mr.
28 Braverman in the chest.

27. On November 7, 2020, the Twitter account @CryptoDadi_ tweeted, "Braverman's coffin $DIG $DIGG." The Tweet was accompanied by a picture of a coffin with writing overlaying the photo, which read, "STEVE'S FUTURE IS, ECHEM BRIGHT."

28. Defendants have used multiple Twitter accounts to infringe, dilute, and create a negative association with the Dignity Marks. Defendant's accounts have included, but are not limited to, the Twitter handles @CryptoDadi_, @StillNoGold, @MrSmileyBrave, @BravermanSteve, @CryptoShadyyy, @ConmanSteve, @SteveBrave3l_, @SteveBraverman, @CapRforSimon, @DnbDig, @TroyJamesh0gg, @McNicholas, @Maarten89NL, @Maarten_Marteen, @DBokhem, @mostwnted1, and @PRNewswire_.

29. Defendants have also used the fake names "Soren Christiansen" and "Simon Hoedemaker on Telegram to perpetrate their systemic campaign of infringement and harassment.

30. Defendants' further utilized the messaging service Telegram to impersonate Mr. Braverman and pretend to act in his capacity in his role at Dignity Corp. A Telegram message sent from a spoof Steve Braverman account included a video attached of an individual placing a gun to their head and shooting themselves in the temple, which read, "I hope you get shot."

31. In November 2020, the Defendants' perpetration of infringement and harassing behavior became even more persistent, and escalated to hundreds of posts per week. The tweets created, posted, and shared by Defendants using the Dignity Marks and Mr. Swig's name included increasing vile content and threats. On November 1, 2020, the Twitter account @StillNoGold posted, "Wtf! Thats gloryhole Swig! $DIG $DIGG @ImpactPartnrs", along with a photo of Mr. Swig. A video of a penis receiving fellatio was also appended to the Tweet.

32. On December 6, 2020, Defendants created a Twitter account, @PRNewswire_, in an effort to put out a fake press release in the name of Dignity

Corp. The Twitter account took assets from the official Cision @PRNewswire Twitter account and created a spoof account for the company that nearly identically resembled that of the actual Cision @PRNewswire account.

33. Through the spoof account, @PRNewswire_, the Defendants devised a fake press release from Dignity Corp. that was distributed via Tweet. The Tweet that was sent out was accompanied by a picture of the fake press release and read, "News provided by Dignity Gold, LLC @DignityGoldLLC, December 6, 2020. New York, December 6, 2020 /PRNewswire/ Dignity Gold is pleased to present the results of our investigation of the illegally minted $DIG tokens." The Tweet went on to further read, "In collaboration with…@SteveBrave31 and @PRNewswire $DIGG."

34. The fake press release was titled, "Dignity Gold, LLC is pleased to announce the completion of our investigation."

35. The fake press release further read, in part, "Dignity Gold, LLC is pleased to present the results of our investigation of the illegally minted $DIG tokens…a criminal investigation is underway and until this investigation is completed, we have to keep quiet. Our President of Dignity Gold, LLC, Stephen Braverman, denies having anything to do with the crimes behind the Dignity token."

36. The fake press release further infringed the Dignity Marks reading, "About Dignity Gold LLC. Headquartered in Delaware with offices in New York City, Dignity Gold is a wholly-owned subsidiary of Dignity Holdings, LLC, a leader in cryptocurrency. For more information about Dignity Gold, please visit www.dignitygold.com."

37. Defendants' fake press release directly identified Dignity Gold, LLC as the source of the content, further writing in the release, "SOURCE Dignity Gold, LLC."

126050841.1

38. Defendants went to great lengths to create a fake news account on behalf of a well-known public relations and press release organization, draft a fake press release, and craft a Tweet to distribute such fake press release all in a scheme to perpetrate a fraud upon the public by using the Dignity Marks. Plaintiff immediately reported the content to Twitter and Cision.

39. In April 2021, Defendants renewed their efforts to infringe upon the Dignity Marks and create a false impression as to the origin of communications from Dignity Corp. Dignity Corp. launched a new offering, and Defendants fraudulently began communicating with Internet users on Twitter with new accounts utilizing the Dignity Marks and making allegations in regards to Dignity Corp.'s principals and its business practices.

40. On April 26, 2021, @Maarten_Marteen tweeted: "KENT SWIG HAS BEEN SUED IN SEVERAL LAWSUITS AGAIN HIM AND HIS "SCAM" COMPANY DIGNITY GOLD. SCAM $UNY $DIG $DIGG $DIGau. RAT (image of rat) Stephen Braverman @SteveBrave31 IS A CAREER SCAMMER"

41. On May 5, 2021, at least one of the Defendants, through the Twitter account @Maarten_Marteen, admitted to being paid to conduct their campaign of infringement and harassing behavior perpetrated against Plaintiff. The @Maarten_Marteen account tweeted, "You know what.. They've stopped paying me and this scam is a waste of time. Good luck wasting your pathetic life dude. Im out. You will never hear from me again. Bye victim. $DIG $DIGau"

42. From August 2020 to May 2021, Plaintiff has been subject to thousands of tweets and other social network communications from the identified social media accounts and names, all with the sole purpose of infringing the Dignity Marks and causing harm to Plaintiff.

**SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT**

43. Defendants' use of the Dignity Marks harms Plaintiff by causing confusion to Internet users and consumers of the source of actual social media

accounts and communications coming from Dignity Corp. with the impersonation accounts being created and utilized by Defendants.

44. Defendants' conduct has also resulted in the dilution of the Dignity Marks, substantial harm to Dignity Corp.'s business reputation and goodwill, and a greater likelihood of confusion, mistake, and deception as to the source or origin of Dignity Corp.'s communications related to its services.

45. Defendants' use of Mr. Braverman's name and likeness, in conjunction with the Dignity Marks and images depicting his person with vile, malicious, and obscene content, causes confusion to Internet users and consumers of the source of actual social media accounts and communications coming from Dignity Corp. with the impersonation accounts being created and utilized by Defendants.

46. Defendants' use of Mr. Swig's name and likeness, in conjunction with the Dignity Marks and images depicting his person with vile, malicious, and obscene content, causes confusion to Internet users and consumers of the source of actual social media accounts and communications coming from Dignity Corp. with the impersonation accounts being created and utilized by Defendants.

**FIRST CAUSE OF ACTION**

**(Federal Trademark Infringement under 15 U.S.C. § 1125(a))**

**(Against all Defendants)**

47. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 46, as though fully set forth herein.

48. Defendants' aforementioned conduct constitutes use of at least one of Plaintiff's Dignity Marks without authorization in connection with their creation of social media accounts and posts.

49. Defendants' use of at least one of Plaintiff's Dignity Marks in connection with their creation of social media accounts and posts has caused, and

1  will further cause, a likelihood of confusion, mistake, and deception as to the
2  source of origin of Plaintiff's services.
3      50.    Defendants' use of at least one of Plaintiff's Dignity Marks in
4  connection with their creation of social media accounts and posts has caused actual
5  confusion as to the source of origin of Plaintiff's services.
6      51.    Defendants' use of at least one of Plaintiff's Dignity Marks in
7  connection with their creation of social media accounts and posts is likely to
8  continue in the future, all to the great and irreparable damage to the business,
9  reputation, and goodwill of the Plaintiff.
10     52.    Defendants' use of at least one of Plaintiff's Dignity Marks in
11 connection with their creation of social media accounts and posts constitutes a
12 misappropriation of Plaintiff's distinguishing and identifying Dignity Marks that
13 were created as a result of effort and expense by Plaintiff over a long period of
14 time. Defendants' use of at least one of Plaintiff's Dignity Marks in connection
15 with their with the creation of social media accounts and posts evokes an initial
16 association or impression and constitutes a false representation that these social
17 media accounts and posts have some connection, association, or affiliation with
18 Plaintiff, and, thus, constitutes a false designation of origin.
19     53.    Defendants, in committing the foregoing acts in commerce, have
20 damaged, and will continue to damage, Plaintiff and the reputation and goodwill of
21 Plaintiff.  Plaintiff is without an adequate remedy at law to redress such acts, and
22 will be irreparably damaged unless Defendants are enjoined from committing and
23 continuing to commit such acts.
24     54.    Defendants' aforesaid acts constitute willful infringement of
25 Plaintiff's trademark rights in violation of 15 U.S.C. § 1125(a).
26
27
28

126050841.1

## SECOND CAUSE OF ACTION

**(Federal Trademark Dilution under 15 U.S.C. §1125(c))**

**(Against all Defendants)**

55. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 46, as though fully set forth herein.

56. The actions of Defendants described above and specifically, without limitation, their unauthorized use of the Dignity Marks, and confusingly similar variations thereof, in commerce throughout the United States, including California, are likely to cause dilution by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

57. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the Dignity Marks, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. 1125(c).

58. On information and belief, the actions of Defendants described above were and continue to be deliberate and willful. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial, and the costs of this action pursuant to 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants as follows:

A. That Plaintiff be granted injunctive relief under the Lanham Act, 15 U.S.C. § 1051 et seq; and federal law and California common law of contributory trademark infringement and vicarious trademark infringement; specifically, that Defendants and all of their respective officers, agents, servants, representatives,

126050841.1

employees, attorneys, and all other persons acting in concert with them be enjoined from:

1. using the Dignity Marks, or any mark confusingly similar to the Dignity Marks, in connection with the marketing, promotion, advertising, sale, or distribution of any products or services;
2. directly or indirectly engaging in false advertising or promotions of Plaintiff's products and services; or
3. making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation, or distribution of Plaintiff's products or services by making false representations regarding Plaintiff's products or services.

B. That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

C. That Plaintiff be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate them for the damage caused by Defendants' false and misleading statements;

D. That such damages and profits be trebled and awarded to Plaintiff, and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

E. That Plaintiff be awarded damages in an amount sufficient to compensate it for the damage caused by Defendants' contributory trademark infringement and vicarious trademark infringement under federal law and California common law;

126050841.1

F.      That Plaintiff be granted prejudgment and post judgment interest;

G.      That Plaintiff be granted costs associated with the prosecution of this action; and

H.      That Plaintiff be granted such further relief as the Court may deem just.

Dated:  June 8, 2021             CARLTON FIELDS, LLP
CHRISTINA M. GAGNIER
STEPHANIE G. CHAU

By:_____
STEPHANIE G. CHAU
Attorneys for Plaintiffs DIGNITY CORP.

14

126050841.1

**REQUEST FOR TRIAL BY JURY**

Plaintiff hereby requests that this case be tried to a jury.

Dated: June 8, 2021

CARLTON FIELDS, LLP
CHRISTINA M. GAGNIER
STEPHANIE G. CHAU

By: _____
STEPHANIE G. CHAU
Attorneys for Plaintiff DIGNITY CORP.

126050841.1